**ORIGINAL**

United States District Court
Eastern District of Michigan
Southern Division

United States of America,

v.

D-2 Alphons Iacobelli,

          Defendant.

Case No. 17-cr-20406

Honorable Paul D. Borman

Offenses:
Count One: **Conspiracy to Violate the Labor Management Relations Act** (18 U.S.C. § 371)

Count Seven: **Subscribing a False Tax Return** (26 U.S.C. § 7206(1))

Maximum Imprisonment:
Count One:      5 years
Count Seven:   3 years

Maximum Fine:
Count One:      $250,000
Count Seven:   $100,000

Maximum Supervised Release:
Count One:      3 years
Count Seven:   1 year

---

# Rule 11 Plea Agreement

---

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant **Alphons Iacobelli** and the government agree as follows:

## I.     Guilty Plea

### A.     Counts of Conviction

Defendant **Alphons Iacobelli** will enter a plea of guilty to Count One and Count Seven of the First Superseding Indictment.

Count One of the First Superseding Indictment charges conspiracy to violate the Labor Management Relations Act, in violation of 18 U.S.C. § 371.

Count Seven of the First Superseding Indictment charges subscribing a false tax return, in violation of 26 U.S.C. § 7206(1).

### Elements of the Offenses

The elements of conspiracy to violate the Labor Management Relations Act, as charged in Count One of the First Superseding Indictment, are as follows:

(1)     Two or more persons conspired to violate the Labor Management Relations Act in violation of 29 U.S.C. § 186(a)(2), (b)(1), and (d)(1).

(2)     The defendant knowingly and voluntarily joined the conspiracy.

(3)     A member of the conspiracy did one of the overt acts described in the First Superseding Indictment for the purpose of advancing or helping the conspiracy.

The elements of subscribing a false tax return, as charged in Count Seven of the First Superseding Indictment, are as follows:

(1)     The defendant made and subscribed a return, statement, or document containing a written declaration made under penalty of perjury;

(2)     The defendant knew that the return, statement, or document was false as to a material matter; and

(3)     The defendant did so with the specific, willful intent to violate the law.

## B.     Factual Basis for Guilty Pleas

The following facts are a sufficient and accurate basis for Defendant **Alphons Iacobelli**'s guilty plea to Count One:

Between in or before January 2009 and continuing through in or after June 2015, **Alphons Iacobelli** knowingly and voluntarily joined a conspiracy in which Fiat Chrysler Automobiles US LLC and its executives agreed to pay and deliver, and willfully paid and delivered, more than $1.5 million in prohibited payments and things of value to officers and employees of the UAW.

### Relevant Organizations

1.     Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA." FCA is the

United States operating subsidiary of Fiat Chrysler Automobiles NV, a publicly traded organization listed on the New York Stock Exchange. FCA manufactured and sold automobiles in the United States under brands such as Chrysler, Jeep, Dodge, and Ram. FCA was an employer in an industry affecting interstate commerce.

2.      The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-managerial employees employed by FCA at numerous locations in Michigan and across the United States.

3.      The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Labor Relations Act, 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers.

**Collective Bargaining Agreements between FCA and the UAW**

4.      Approximately every four years FCA and the UAW engaged in national negotiations resulting in collective bargaining agreements that set wages,

attendance policies, profit sharing, ratification bonuses, holidays, and other working conditions for FCA employees represented by the UAW.

5.      In 2011 and 2015, FCA and the UAW held national negotiation sessions that resulted in ratified collective bargaining agreements covering tens of thousands of FCA employees represented by the UAW.

### Conspiracy to Violate the Labor Management Relations Act

6.      From 2008 until he retired in June 2015, **Alphons Iacobelli** was the FCA Vice President for Employee Relations.  As the FCA Vice President for Employee Relations, **Alphons Iacobelli** was FCA's lead representative for labor relations and had lead responsibility for managing FCA's relationship with the UAW.  **Alphons Iacobelli** was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW, including the resolution of disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

7.      Between in or before January 2009 and continuing through in or after June 2015, **Alphons Iacobelli** knowingly and voluntarily joined a conspiracy in which FCA and FCA executives and FCA employees agreed to pay and deliver, and willfully paid and delivered, money and things of value to officers and employees of the UAW.  As part of that conspiracy, **Alphons Iacobelli** and other FCA executives and FCA employees acting in the interest of employer FCA used the

bank accounts and credit card accounts of the NTC to benefit officers and employees of the UAW, knowing that those individuals were not permitted to receive the money and other things of value.

8.  Over the course of the conspiracy, FCA Vice President **Alphons Iacobelli**, FCA Director FCA-7, FCA Senior Manager FCA-11, FCA Financial Analyst Jerome Durden, and other FCA executives and employees, unlawfully paid and delivered more than $1.5 million in prohibited payments and things of value directly and indirectly to UAW Vice President General Holiefield, UAW Assistant Director Virdell King, UAW Official UAW-2, UAW Official UAW-3, UAW Official UAW-4 and other UAW officials. The prohibited payments and things of value included paying off the mortgage on the personal residence of a UAW Vice President, personal travel, designer clothing, cases of custom-labeled wine, furniture, jewelry, and custom-made watches.

9.  As part of the same conspiracy, FCA Vice President **Alphons Iacobelli** and other FCA executives and FCA employees transferred hundreds of thousands of dollars in prohibited payments from FCA, through the NTC, into tax-exempt organizations controlled by UAW officials, including the Leave the Light On Foundation and the Making Our Children Smile Foundation, among others.

10.  As part of the same conspiracy, FCA Vice President **Alphons Iacobelli** and other FCA executives and FCA employees authorized the regular

transfer of hundreds of thousands of dollars from the NTC to the UAW, purportedly as reimbursement for the salaries of UAW employees assigned to the NTC. In fact, many of those UAW employees provided no services to the NTC. The salary reimbursements, along with a fraudulent 7% administrative fee, were authorized by FCA executives as a political gift to the Vice Presidents of the UAW Chrysler Department, and were paid for using funds provided by FCA.

11. FCA Vice President **Alphons Iacobelli**, FCA Director FCA-7, FCA Senior Manager FCA-11, FCA Financial Analyst Jerome Durden, FCA and other co-conspirators acting in the interest of employer FCA paid and delivered more than $1.5 million in prohibited payments and things of value to UAW officers and UAW employees in an effort to obtain benefits, concessions, and advantages for FCA in the negotiation, implementation, and administration of the collective bargaining agreements between FCA and the UAW.

### Overt Acts

12. One or more members of the conspiracy completed one or more of the following overt acts to effect the object of the conspiracy:

13. In September 2009, FCA Vice President **Alphons Iacobelli** met with FCA Director FCA-7, FCA Senior Manager FCA-11, and FCA Financial Analyst Jerome Durden to review spending of NTC funds. During that meeting, **Alphons Iacobelli** explained that cost cutting was no longer needed at the NTC and that it

- 7 -

was time to consider funding for selected "high value/high leverage programs."
**Alphons Iacobelli** identified a $50,000 transfer to UAW Vice President General
Holiefield's Leave the Light On Foundation as one of four such "high value/high
leverage" expenditures.

14.    In February 2010, another FCA executive gave a custom-made Terra
Cielo Mare watch to UAW Vice President General Holiefield. Along with the Terra
Cielo Mare watch was a hand-written note from the FCA executive that stated
"Dear General, I declared the goods at less than fifty bucks. That should remove
any potential conflict. Best regards, and see you soon."

15.    In May 2011, FCA Vice President **Alphons Iacobelli** authorized the
expenditure of more than $2,100 to pay for first-class airline travel for Monica
Morgan, the girlfriend of UAW Vice President General Holiefield. The first-class
airfare was paid for by the NTC using funds provided by FCA.

16.    In May 2011, FCA Vice President **Alphons Iacobelli** sent an email to
FCA Financial Analyst Jerome Durden cautioning Durden not to put the details of
certain expenditures made for the benefit of UAW Vice President General
Holiefield in writing.

17.    In 2011 and 2012, FCA Vice President **Alphons Iacobelli** and other
FCA executives and employees authorized and directed the expenditure of more
than $435,000 to a company called Wilson's Diversified Products, also known as

Wilson Diversifed Products, which was owned and controlled by UAW Vice President General Holiefield and his girlfriend and later wife, Monica Morgan. The payments to Wilson Diversified Products were made by the NTC using funds provided by FCA.

18. Between 2012 and June 2015, FCA Vice President **Alphons Iacobelli** authorized the expenditure of more than $450,000 to pay for personal purchases made by UAW Vice President General Holiefield and other UAW officials on their NTC-issued credit cards. FCA Vice President **Alphons Iacobelli** encouraged and authorized UAW Vice President General Holiefield, UAW Assistant Director Virdell King, UAW Official UAW-2, UAW Official UAW-3, UAW Official UAW-4, and other UAW officials to purchase items such as jewelry, furniture, electronics, designer clothing, and other personal items using their NTC credit cards. The purchases of personal items and other personal expenses were paid for by the NTC using funds provided by FCA.

19. In December 2013, FCA Vice President **Alphons Iacobelli** sent an email to another FCA executive confirming that UAW Vice President General Holiefield had been "scripted" in advance of a scheduled meeting between Holiefield and other members of the UAW's International Executive Board. **Iacobelli** told the other FCA executive that, during the upcoming meeting, UAW Vice President General Holiefield would "create a dialogue pursuant to our

outline." At the time of the December 2013 email, members of the UAW International Executive Board were considering the terms of a multi-billion dollar offer to purchase the equity interest held by the UAW Retiree Medical Benefits Trust in Chrysler Group LLC, subsequently known as FCA. That transaction was completed in January of 2014.

20.     In June 2014, FCA Vice President **Alphons Iacobelli** authorized the expenditure of $262,219.71 to pay off the mortgage on the residence of UAW Vice President General Holiefield and Monica Morgan in Harrison Township, Michigan. The mortgage was paid off with a check issued by the NTC using funds provided by FCA.

21.     In August 2014, FCA Vice President **Alphons Iacobelli** authorized the expenditure of more than $30,000 for a party for UAW official UAW-3 held at the FCA-UAW World Class Manufacturing Academy in Warren, Michigan. The expenditure included charges for "ultra-premium" liquor, more than $7,000 worth of cigars, and more than $3,000 worth of wine with custom labels in honor of UAW-3. The expenses were paid for by the NTC using funds provided by FCA.

22.     In February and March of 2015, FCA Vice President **Alphons Iacobelli** and other FCA executives and employees, including FCA Senior Manager FCA-10, offered to pay $50,000 each to select UAW officials under the guise of bogus "settlement agreements." The terms of those agreements stated that the

payments were to be confidential and that FCA would not pay the $50,000 "if it were unable to avoid public disclosure" of the arrangements.

23. On February 18, 2015, at the direction of FCA Vice President **Alphons Iacobelli**, FCA Senior Manager FCA-10 sent an email to UAW Official UAW-4 offering that FCA would make lump sum payments of $50,000 to select UAW officials as a "one-time non-precedent setting" retirement offer. To ensure that the rank and file UAW members would not be made aware of the $50,000 payments offered only to senior UAW officials, FCA-10 assured UAW-4: "My people will process the transactions to keep them out of the plants."

*          *          *

The following facts are a sufficient and accurate basis for defendant **Alphons Iacobelli's** guilty plea to Count Seven of the First Superseding Indictment:

24. From in and before January 1, 2009 through June of 2015, **Alphons Iacobelli** served as the Co-Chairman of the NTC. **Alphons Iacobelli** held that position at the NTC in his capacity as the FCA Vice President for Employee Relations.

25. Between 2011 and 2015, **Alphons Iacobelli** received hundreds of thousands of dollars in compensation from the NTC, which compensation was falsely and fraudulently omitted from tax returns filed with the Internal Revenue Service.

- 11 -

26.     On or about March 19, 2015, **Alphons Iacobelli**, a resident of
Rochester Hills, Michigan, willfully made and subscribed a false Form 1040
Individual Income Tax Return for calendar year 2014, verified by a written
declaration that it was made under the penalties of perjury, and caused it to be filed
with the Internal Revenue Service.  At the time he signed and subscribed the 2014
IRS Form 1040 Return, **Alphons Iacobelli** did not believe the return to be true and
correct as to every material matter, in that the return failed to report additional
income, in the amount of $861,927, that **Alphons Iacobelli** received in calendar
year 2014.

## II.     Sentencing Guidelines

### A.     Standard of Proof

The parties agree that the Court will determine all sentencing factors by a
preponderance of the evidence.

### B.     Agreed Guideline Range

The parties agree on all sentencing factors except the following:

### 1.     If the offense of conviction charged in Count Seven involved "sophisticated means" within the definition of USSG § 2T1.1(b)(2).

The government takes the position that the defendant's offense of conviction
charged in Count Seven falls within the definition of sophisticated means and that
defendant's base offense level on that offense should be increased by 2 levels

pursuant to USSG § 2T1.1(b)(2).  Defendant **Alphons Iacobelli** reserves his right to contest the application of USSG § 2T1.1(b)(2).

The parties agree that the Court shall determine this and all sentence guideline factors by a preponderance of the evidence and further agree to be bound by the Court's determination.

The government takes the position that the defendant's advisory sentencing guideline range is **97–121 months** which, by operation of the statutory maximum penalties for the offenses of conviction, becomes **96 months**.  If the Court finds:

1.  that defendant's criminal history category is higher than reflected on the attached worksheets, or

2.  that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from his probation officer; otherwise demonstrated a lack of acceptance of responsibility for his offenses; or obstructed justice or committed any crime,

and if any such finding results in a higher guideline range higher, the higher guideline range becomes the advisory sentencing guideline range in this matter.

## III.    Sentence

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

### A.    Imprisonment

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed **96 months**.  The parties further agree that 96 months is the statutory maximum penalty that can be imposed based upon the offenses of conviction.

### B.    Supervised Release

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is not more than three years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

### C.    Special Assessment

Defendant will pay a special assessment of $200.

### D.    Fine

There is no agreement as to fines.

### E.    Restitution

Pursuant to 18 U.S.C. § 3663, the parties agree that restitution payable to the U.S. Department of the Treasury shall be imposed in this matter in the amount of not less than $835,523, which figure represents additional federal income taxes due

and owing to the Internal Revenue Service by defendant **Alphons Iacobelli** for tax years 2012, 2013, 2014 and 2015.  The restitution amount of $835,523 may be increased by any interest and assessable penalties due and owing as calculated by the U.S. Probation department.

**F.     Preparation of Tax Returns and Calculation and Payment of Taxes Due and Owing**

(i)   Not later than 14 days from entry of his guilty plea, defendant **Alphons Iacobelli** will provide the IRS Examination Division with a true and accurate IRS Form 4549 and a true and accurate IRS Form 870 for the years 2012 through 2015 inclusive by delivering signed copies of such documents to: IRS-CI Special Agent Michael Petroske, 985 Michigan Avenue, Room 251, Detroit, Michigan 48226.

(ii)   As a condition of and at least 90 days prior to the expiration of any term of probation or supervised release imposed herein, defendant **Alphons Iacobelli** shall in good faith file true and correct amended individual IRS Form 1040 income tax returns for the tax years 2012, 2013, 2014 and 2015.

(iii)   Defendant **Alphons Iacobelli** shall further cooperate fully and in good faith with the Internal Revenue Service in determining his correct tax liability, including, any assessable penalties and applicable interest owed thereon, and shall make satisfactory arrangements with the Internal Revenue Service for payment of any unpaid taxes, penalties, and interest.

(iv)   Defendant **Alphons Iacobelli** agrees that he will not seek, request or file any claim for any refunds of any taxes, penalties or interest for the tax years 2012 through 2015, inclusive.

(v)     Defendant **Alphons Iacobelli** shall further cooperate fully and in good faith with the Internal Revenue Service in determining the correct tax liabilities of the NTC and any individual who received unreported income from the NTC, between 2009 and 2015, including any assessable penalties, and interest owed thereon.

(vi)     Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, penalties or interest due from defendant **Alphons Iacobelli**.

**G.     Forfeiture**

(i)     Mont Blanc Pens

Defendant **Alphons Iacobelli** agrees that the following assets shall not be forfeited in this criminal action, but shall instead be forfeited administratively and/or liquidated under the terms of a separate written agreement between the parties as payment towards defendant's restitution judgment for his outstanding income tax obligations for 2012 through 2015:

1. One Mont Blanc, America's Sign for Freedom, Abraham Lincoln themed pen and the accompanying book and box, serial number 11 ("Pen SN 11"); and

2. One Mont Blanc, America's Sign for Freedom, Abraham Lincoln themed pen and the accompanying book and box, serial number 28 ("Pen SN 28").

(together, the "Subject Property").

To facilitate liquidation of the Subject Property, defendant agrees to secure a withdrawal of the third party claim filed by Dr. Michael Graham for Pen SN 11. Defendant acknowledges that if he is unable to secure a withdrawal of the third party claim for Pen SN 11, the pen shall be subject to a judicial forfeiture proceeding.  If the United States is required to include Pen SN 11 in a judicial forfeiture proceeding, defendant shall not receive any credit for this asset towards his restitution judgment for his outstanding income tax obligations for 2012 through 2015.

Subject to the preceding paragraph, the net proceeds from the sale of any Subject Property liquidated under this agreement shall be turned over to be applied toward defendant's restitution judgment for his outstanding income tax obligations for 2012 through 2015, as described above.

ii.     Funds in the amount of $354,000

Defendant **Alphons Iacobelli** acknowledges that funds in the amount of $354,000 were seized in this matter on or about February 18, 2016 pursuant to a federal seizure warrant (16-FBI-002141). Defendant further acknowledges that the $354,000 in funds were thereafter administratively forfeited.

As part of this agreement, defendant agrees not to contest either the seizure or the administrative forfeiture of the $354,000 in funds. Defendant further requests that the $354,000 be applied toward the restitution judgment for his outstanding income tax obligations for 2012 through 2015, as described above.

In the event that the Court enters the requested Judgment of Restitution in favor of the United States Department of Treasury in this case, the parties agree to submit a request to the U.S. Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section ("MLARS"), to remit or restore the administratively forfeited funds to the United States Department of Treasury. Defendant expressly acknowledges that these funds have already been administratively forfeited, that any request to remit or restore the funds may be denied by MLARS, which denial will not be subject to further review, and that no representations have been made to him by or on behalf of the U.S. Attorney's Office as to the likelihood that the request to MLARS will be granted.

## IV.   Cooperation Agreement

The written cooperation agreement between defendant **Alphons Iacobelli** and the government, which is dated December 15, 2017, is part of this plea agreement. The government agrees to bring no additional criminal charges against defendant **Alphons Iacobelli** arising out of his involvement in the offenses charged in the First Superseding Indictment, or for additional criminal conduct disclosed under the terms of the December 15, 2017 cooperation agreement, unless the defendant withdraws his plea or breaches that cooperation agreement.

## V.   Use of Withdrawn Guilty Plea

If the Court allows defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant **Alphons Iacobelli** waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

## VI.   Defendant's Right to Withdraw from this Agreement

Defendant **Alphons Iacobelli** may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than 96 months. This is the only reason for which defendant may withdraw from this agreement. The Court shall advise defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than 96 months.

## VII.   Appeal Waiver

Defendant **Alphons Iacobelli** waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 96 months, the defendant also waives any right he may have to appeal his sentence, including the fine and amount of restitution imposed, on any grounds.

Nothing in this waiver bars a timely claim of ineffective assistance of counsel on appeal or by collateral relief under 28 U.S.C. § 2255.

## VIII.   Consequences of Withdrawal of Guilty Plea or Vacation of Conviction

If the defendant is allowed to withdraw his guilty plea or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## IX.   Parties to Plea Agreement

- 20 -

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## X.    Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a written proffer agreement or a written cooperation agreement with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## XI.   Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by 5:00 P.M. on December 15, 2017. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

Daniel L. Lemisch
Acting United States Attorney


David A. Gardey
Assistant United States Attorney
Chief, Public Corruption Unit


Bruce C. Judge
Assistant United States Attorney


Charles J. Kalil II
Assistant United States Attorney


Erin S. Shaw
Assistant United States Attorney

Date:   12/15/2017

By signing below, defendant acknowledges that he has read (or has been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyers, and has had all of his questions answered by his lawyers.


_____
David F. DuMouchel
Attorney for Defendant

Date: 12/15/17


_____
Damien P. DuMouchel
Attorney for Defendant

Date: 12/15/17


_____
Alphons Iacobelli
Defendant

Date: 12-15-2017

## WORKSHEET A

# OFFENSE LEVEL

Defendant **Alphons Iacobelli**　　　　　　　　District/Office **Eastern District of Michigan**

Docket Number **17-cr-20406-02**

Count Number(s) **One**　　　　　U.S. Code Title & Section **18** : USC **371** ; **29** : USC **186**

*Guidelines Manual* Edition Used: 20*16*　(Note: The Worksheets are keyed to the November 1, 2016 *Guidelines Manual*)

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions:* Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

**1. Offense Level (See Chapter Two)**

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2E5.1(a)(1) | Prohibited bribe payments to officers and employees of a labor organization | 10 |
| 2E5.1(b)(2) & 2B1.1(b)(1)(I) | Value of payments greater than $1,500,000 | +16 |
| | | |
| | | |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.　　**Sum** | 26 |

**2. Victim-Related Adjustments (See Chapter Three, Part A)**

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".　§ _____ | |

**3. Role in the Offense Adjustments (See Chapter Three, Part B)**

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".　§ 3B1.1(b) & 3B1.1.3 | +6 |

**4. Obstruction Adjustments (See Chapter Three, Part C)**

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".　§ _____ | |

**5. Adjusted Offense Level**

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.　| 32 |

☐　Check here if **all** counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

☐　If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET A

# OFFENSE LEVEL

Defendant **Alphons Iacobelli**                              District/Office **Eastern District of Michigan**

Docket Number **17-cr-20406-02**

Count Number(s) **Seven**                    U.S. Code Title & Section **26** , USC **7206(1)** , _____

*Guidelines Manual* Edition Used: 20**16** *(Note: The Worksheets are keyed to the November 1, 2016 Guidelines Manual)*

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions:* Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

### 1. Offense Level (see Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2T1.1(a)(1) & 2T4.1(H) | False returns with total tax loss of more than $550,00 | 20 |
| 2T1.1(b)(1) | Defendant failed to report income exceeding $10,000 from criminal activity | +2 |
| 2T1.1(b)(2) | Offense involved sophisticated means | +2 |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.          Sum  **24**

### 2. Victim-Related Adjustments (see Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".          §_____  [ ]

### 3. Role in the Offense Adjustments (see Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".          § 3B1.1.3   **+2**

### 4. Obstruction Adjustments (see Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".          §_____  [ ]

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.          **26**

[ ]  Check here if all counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

[ ]  If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET B

# MULTIPLE COUNTS*

Defendant __Alphons Iacobelli__          Docket Number __17-cr-20406-02__

## INSTRUCTIONS

**STEP 1:** Determine if any of the counts group under §3D1.2(a)–(d) ("the grouping rules"). All, some, or none of the counts may group. Some of the counts may have already been grouped in the application under Worksheet A, specifically: (1) counts grouped under §3D1.2(d); or (2) a count charging conspiracy, solicitation, or attempt that is grouped with the substantive count of conviction (see §3D1.2(a)). Explain the reasons for grouping:

_____

_____

**STEP 2:** Using the box(es) provided below, for each group of "closely related counts" (i.e., counts that group together under any of the four grouping rules), enter the highest adjusted offense level from Item 5 of the various Worksheets "A" that comprise the group. See §3D1.3. Note that a "group" may consist of a single count that has not grouped with any other count. In those instances, the offense level for the group will be the adjusted offense level for the single count.

**STEP 3:** Enter the number of units to be assigned to each group (see §3D1.4) as follows:
- One unit (1) for the group of counts with the highest offense level
- An additional unit (1) for each group that is equally serious or 1 to 4 levels less serious
- An additional half unit (1/2) for each group that is 5 to 8 levels less serious
- No increase in units for groups that are 9 or more levels less serious

**1. Adjusted Offense Level for the First Group of Counts**

Count number(s) __One__          | 32 |   1   Unit

**2. Adjusted Offense Level for the Second Group of Counts**

Count number(s) __Seven__          | 26 |   1/2   Unit

**3. Adjusted Offense Level for the Third Group of Counts**

Count number(s) _____          | | ____ Unit

**4. Adjusted Offense Level for the Fourth Group of Counts**

Count number(s) _____          | | ____ Unit

**5. Adjusted Offense Level for the Fifth Group of Counts**

Count number(s) _____          | | ____ Unit

**6. Total Units**

11/2  **Total Units**

**7. Increase in Offense Level Based on Total Units (See §3D1.4)**

| 1 unit: | no increase | 2½ – 3 units: | add 3 levels |
| 1½ units: | add 1 level | 3½ – 5 units: | add 4 levels |
| 2 units: | add 2 levels | More than 5 units: | add 5 levels |

| 1 |

**8. Highest of the Adjusted Offense Levels from Items 1-5 Above**

| 32 |

**9. Combined Adjusted Offense Level (See §3D1.4)**

Enter the sum of Items 7 & 8 here and on Worksheet D, Item 1.          | 33 |

*Note: Worksheet B also includes applications that are done "as if there were multiple counts of convictions," including: multiple-object conspiracies (see §1B1.2(d)); offense guidelines that direct such application (e.g., §2G2.1(d)(1) (Child Porn Production)); and stipulations to additional offenses (see §1B1.2(c)). Note also that these situations typically require the use of multiple Worksheets A.

# WORKSHEET C

# CRIMINAL HISTORY
[Page 1 of 2]

Defendant  Alphons Iacobelli                    Docket Number  17-cr-20406-02

Note: As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

Enter the Earliest Date of the Defendant's Relevant Conduct  January 1, 2009
(The date of *the defendant's commencement of the instant offense(s)*)

## 1. Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) 3 Points if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. See §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) 2 Points for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. See §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) 1 Point for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. See §§4A1.1(c) and 4A1.2(d)(2)(B).

Note: Identify as "adult" any sentence exceeding one year and one month that resulted from an adult conviction.
A release date is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct*, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## 2. Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) 3 Points for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. See §§4A1.1(a) and 4A1.2(e)(1).

(b) 2 Points for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. See §§4A1.1(b) and 4A1.2(e)(2).

(c) 1 Point for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. See §§4A1.1(c) and 4A1.2(e)(2).

Note: A release date is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant _Alphons Iacobelli_                    Docket Number _17-cr-20406-02_

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b) & (c) in Items 1 & 2**

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

**4. "Status" of Defendant at Time of Instant Offense**

2 Points for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter 0 Points.

**5. Crimes of Violence**

1 Point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter 0 Points.

**4. Total Criminal History Points (Sum of Items C–5)** — 0

**5. Criminal History Category (Enter here and on Worksheet D, Item 4)** — I

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

## WORKSHEET D

# DETERMINING THE SENTENCE
## [Page 1 of 4]

Defendant  Alphons Iacobelli                    Docket Number  17-cr-20406-02

**1. Adjusted Offense Level (From Worksheet A or B)**
If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.

| 33 |

**2. Acceptance of Responsibility (See Chapter Three, Part E)**
Enter the applicable reduction of 2 or 3 levels. If no adjustment is applicable, enter "0".

| − 3 |

**3. Offense Level Total (Item 1 less Item 2)**

| 30 |

**4. Criminal History Category (From Worksheet A or C)**
Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.

| I |

**5. Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender (See Chapter Three, Part A and Chapter Four, Part B)**

a. **Offense Level Total**
If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

|  |

b. **Criminal History Category**
If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

|  |

**6. Guideline Range from Sentencing Table**
Enter the applicable guideline range from Chapter Five, Part A, in months.

| 97    to 121 |

**7. Restricted Guideline Range (See Chapter Five, Part G)**
If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".

| to 96 |

☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

**8. Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment (See §5G1.3)**

☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant Alphons Iacobelli _____   Docket Number 17-cr-20406-02 _____

## 9. Sentencing Options (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

### Zone A (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

[ ]   If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

### Zone B (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

[ ]   If checked, *the minimum term may be satisfied by:*

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

### Zone C (See §5C1.1(a) & (d))

[ ]   If checked, *the minimum term may be satisfied by:*

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

### Zone D (See §5C1.1(a) & (f))

[✓]   If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

## 10. Length of Term of Probation (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

[✓]   At least one year, but not more than five years if the offense level total is 6 or greater.

[ ]   No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant  Alphons Iacobelli                                Docket Number  17-cr-20406-02

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

a.  **Imposition of a Term of Supervised Release:**

☐  Ordered because required by statute (*See* §5D1.1(a)(1)).

☑  Ordered because a sentence of imprisonment of more than one year is imposed (*See* §5D1.1(a)(2)).

☐  Is *not* ordered although a sentence of more than one year is imposed, because it is not required by statute *and* the defendant likely will be deported after imprisonment (*See* §5D1.1(c)).

☐  Ordered because it may be ordered in any other case (*See* §5D1.1(b)).

b.  **Length of Term of Supervised Release**

Check the Class of the Offense:

☐  Class A or B Felony: Two to Five Year Term (*See* §5D1.2(a)(1)).

☑  Class C or D Felony: One to Three Year Term (*See* §5D1.2(a)(2)).

☐  Class E Felony or Class A Misdemeanor: One Year Term (*See* §5D1.2(a)(3))

☐  If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (*See* §5D1.2(c)):

_____ years mandatory minimum term of supervised release

☐  If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (*See* §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a.  If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
Restitution payable to the U.S. Department of the Treasury shall be imposed in this matter in the amount of not less than $835,523.00.

The restitution amount may be increased by interest due and owing and applicable penalties as calculated by the U.S. Probation department.

b.  Enter whether restitution is statutorily mandatory or discretionary:
Discretionary

c.  Enter whether restitution is by an order of restitution, or *solely* as a condition of supervision. Enter the authorizing statute:
Order of Restitution under 18 USC 3663

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant Alphons Iacobelli                          Docket Number 17-cr-20406-02

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|  | | Minimum | Maximum |
|---|---|---|---|
| a. | **Special Fine Provisions** | | |
| | ✓ Check box if any of the counts of conviction is for a statute with a special fine provision. (This *does not* include the general fine provisions of 18 USC § 3571(b)(2) & (d)). | | |
| | Enter the sum of statutory maximum fines for all such counts. | | $ 350,000 |
| b. | **Fine Table (§5E1.2(c)(3))** Enter the minimum and maximum fines. | $ 30,000 | $ 300,000 |
| c. | **Fine Guideline Range** (Determined by the minimum of the Fine Table (Item 15(b)) and the greater maximum above (Item 15(a) or 15(b))). | $ 30,000 | $ 350,000 |
| d. | **Ability to Pay** ☐ Check this box if the defendant does not have an ability to pay. | | |

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:** $ 200

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

_____

_____

_____

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.
To be presented by defendant prior to or at the time of sentencing

_____

_____

_____

**Completed by** AUSA Bruce C. Judge                    **Date** November 1, 2017